# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------ X
-----

DAVID PLACEK, DP SLFI, LLC, DP                  :        Index No.
INVESTORS III, DP SLF II, LLC, and DP SLF II
MEMBER LLC

                Plaintiff       :

             -against-                 :

WILLIAM SHOPOFF, individually, and              :
WILLIAM AND CINDY SHOPOFF, as
TRUSTEES FOR THE SHOPOFF REVOCABLE
TRUST

              Defendants.     :

------------------------------ X
-----

## MEMORANDUM OF LAW SUPPORT OF SUMMARY JUDGEMENT
## IN LIEU OF A COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………ii

INTRODUCTION……………………………………………………………………………….1

PRELIMINARY STATEMENT…………………………………………………………………1

BACKGROUND AND STATEMENT OF FACTS–

    A. Placek's Employment Agreement with TSG……………………………………….2

    B. Placek's Investment in LFI and Shopoff's Guaranty……………………………...3

    C. Plaintiffs Exercised the Put Options and SRI's and
       Shopoff's Failure to Fulfill their Obligations……………………………………...5

    D. Placek Invested in a Second Land Fund Project Guaranteed
       by William Shopoff and the Shopoff Revocable Trust……………………………7

    E. SRI Defaulted on the LF2 Payments………………………………………………9

    F. Shopoff has Acknowledged the Debt and His Failure to Pay……………………10

ARGUMENT—

    A. Jurisdiction and Venue are Proper………………………………………………10

    B. Plaintiff is Entitled to Summary Judgment on Payment of the Obligations
       Under the Put Agreements Pursuant to the Guarantees…………………………10

        1. The Guarantees are Instruments for the Payment
           of Money Only …………………………………………………………11

        2. Plaintiffs Are Entitled to Summary Judgment on the Guarantees……………13

        3. Plaintiff is Entitled to All Outstanding Principal, Interest,
           Attorneys' Fees and Costs Under the Guarantees……………………..…14

CONCLUSION………………………………………………………………………………...14

# TABLE OF AUTHORITIES

**Cases**

*Barraco v. Rosendale,*
 558 N.Y.S.2d 240 (3rd Dep't 1990)..........................................................................11

*Citibank N.A. v. Schaffran,*
 465 N.Y.S.2d 87 (1st Dep't 1983)............................................................................15

*First Interstate Credit All., Inc. v. Sokol,*
 579 N.Y.S.2d 65 (1st Dep't 1992)............................................................................15

*GSO RE Onshore LLC v. Sapir,*
 2010 NY Slip Op 52138(U), ¶ 5 (Sup. Ct., NY County, Nov. 24, 2010)...................11

*Interman Indus. Prods., Ltd. V. R.S.M. Electron Power,*
 37 NY2d. 151, (1975)...............................................................................................11

*Seaman-Andwall Corp. v. Wright Mach. Corp.,*
 295 N.Y.S.2d 752 (1st Dept. 1968), aff'd, 29 NY2d 617, (1971).........................11,13

*Torres & Leonard, P. C. v. Select Prof'l Realties, Ltd.,*
 499 N.Y.S.2d 707 (1st Dep't. 1986)..........................................................................15

*UBS Commercial Mortg. Tr. 2007-FL1 v. Garrison Special Opportunities Fund L.P.,*
 938 N.Y.S.2d 230(Sup. Ct., NY County, March 8, 2011)......................................12,13

*Weissman v. Sirnorm Deli, Inc.,*
 88 N.Y.S.2d 437 (1996)............................................................................................11

**STATUTES**

C.P.L.R. § 302..........................................................................................................................10

C.P.L.R. § 503..........................................................................................................................10

C.P.L.R. § 3213..................................................................................................................passim

**OTHER SOURCES**

David D. Siegel, New York Practice 448 (3d ed. 1999)............................................................11

## INTRODUCTION

Plaintiffs David Placek, DP Investors III, LLC ("DP Investors III") and DP SLF II Member, LLC ("DP SLF II Member") (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this Motion for Summary Judgment in lieu of Complaint against Defendants William Shopoff individually and William Shopoff and Cindy Shopoff as Trustees of the Shopoff Revocable Trust (collectively, "Defendants" or "Guarantors") for breach of certain guaranty agreements related to investment income due to Plaintiffs by two entities, Shopoff Investors III L.P. ("SI III") and Shopoff Investors IV ("SI IV") controlled by Defendants and their company, Shopoff Realty Investments, L.P. ("SRI").[1]

## PRELIMINARY STATEMENT

Plaintiffs bring this lawsuit to enforce promises Defendants made in two guaranty agreements (the "Guaranties"). Plaintiffs and the Defendants entered into the Guaranties in consideration of and as an inducement for Plaintiffs to invest in two commercial real estate funds managed by SRI, Shopoff Land Fund I ("LF1") and Shopoff Land Fund II ("LF2") through put option agreements (collectively the "Put Option Agreements"). The Put Option Agreements required SI III and SI IV (collectively the "SRI entities") to purchase Plaintiffs' equity from the investments in the Shopoff Land Funds upon the exercise date of the options.

In connection with Plaintiffs' investments, William Shopoff and Cindy Shopoff, principals of SRI, provided Plaintiffs with guaranties should the SRI entities default on their obligations under the terms of the Put Option Agreements. With respect to investments in LFI, William Shopoff provided a Guaranty for all obligations of the SRI entities in connection with that

---

[1] Formerly, "The Shopoff Group."

1

investment. For LFII, William Shopoff, individually, with William and Cindy Shopoff as Trustees for the Shopoff Revocable Trust, provided a Guaranty for all obligations of the SRI entities in connection with that investment.

Based on these Guaranties, Plaintiffs invested several million dollars in the Land Funds. To date, the SRI entities have repeatedly breached their obligations under the Put Option Agreements, including multiple revised payment schedules imposed on Plaintiffs by continued threats of non-payment, and the substantial consequential damages that would result to Plaintiffs from non-payment.

As a result of these breaches and failed payments, the Guarantors are obligated to pay all unpaid obligations, including all late penalties, as well as all costs and attorney's fees incurred due to non-payment and recovery. Plaintiffs bring this Motion for Summary Judgment in lieu of Complaint to recover these damages from Guarantors, who have breached their duties under the Guarantees. Because there are no issues of material fact in dispute, Plaintiffs respectfully request that the Court grant their motion in the amount totaling $1,216,139.00.

## STATEMENT OF FACTS

### A. Placek's Employment Agreement with TSG

In July 2012, SRI hired Placek as an Executive Vice President responsible for pursuing income-producing real estate opportunities in support of SRI's commercial real estate business. *See* Affidavit of David Placek ("Placek Aff.:), ¶ 5. At the time, Placek entered into an Employment and Confidentiality Agreement (the "Employment Agreement") with SRI, which outlined a detailed compensation plan for the work he performed for SRI's commercial real estate business. *Id.*, at ¶ 6; Exhibit A, ¶ 3.

2

In addition to the work performed for the Company, the Employment Agreement required Placek to purchase at least a $2.5 million limited partnership interest in the LFI, with a put option to sell the interest upon the sale of a large-scale commercial project known as the "Uptown-Newton Project." *Id.* at ¶ 6. The Employment Agreement directed the parties to enter into definitive agreements consistent with the obligations set forth in the Employment Agreement, which outlined generally the distributions that Placek would be entitled to if he exercised the put options extended to him. *Id.*

Placek worked for SRI for almost six years, departing the Company to explore other opportunities in February 2018. Placek Aff, ¶ 30.

### B. Placek's Investment in LFI and Shopoff's Guaranty

Placek formed DP SLFI and DP Investors III for purposes of fulfilling his obligation of investing in LFI. *Id.* ¶ 7. Placek formed these entities while operating out of SRI's New York offices, and the principal place of business of these entities was New York, NY. Plaintiffs DP SLFI is owned by a group of investors, including Placek. *Id.* DP Investors III is a single member limited liability company owned by Placek. *Id.* Both entities were formed in Delaware. *Id.*

To memorialize the investment in LFI, Plaintiffs DP SLFI and DP Investors III entered into two separate Limited Partnership Put Agreements (collectively, "LFI Put Agreements") with SI III in October 2012. The first agreement was the Limited Partnership Put Agreement between plaintiff DP SLFI, LLC and SI III ("DP SLFI Agreement"); the second agreement was the Limited Partnership Put Agreement between plaintiff DP Investors III, LLC and SI III ("Investors III Agreement"). *See Id.* at ¶ 8; *see also* Exhibit B, DP SLFI Agreement; Exhibit C, Investors III Agreement. All notices for these agreements were to be sent to Plaintiffs' New

3

York address. *See* Placek Aff., ¶ 7. Both the DP SLFI Agreement and Investors III Agreement were executed on October 18, 2012 and the aggregate contribution under the two agreements was $5.9 million. *See Id.* at ¶ 8; *see also* Exhibit B, DP SLFI Agreement; Exhibit C, Investors III Agreement. Further, the DP SLFI Agreement and Investors III Agreement both contained put options, which permitted Plaintiffs DP SLFI and DP Investors III to sell their interest in LFI back to SI III for an amount based upon the exercise date.

In connection with, and as an inducement for, the DP SLFI Agreement and Investors III Agreement, Defendant William Shopoff, individually, provided a Guaranty to DP SLFI and DP Investors III (the "Investors III Guaranty"). The Investors III Guaranty provides broad protections to DP Investors III in the event of default by SI III. Specifically, William Shopoff guaranteed "all amounts which are due and payable under the [Investors III Agreement], when and as required under the [Investors III Agreement], and attorneys' fees, expenses, and court costs (whether incurred in connection with any enforcement activities by Placek or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving Investors III or Guarantor)." *See* Exhibit D, ¶ 1.1.

According to the Investors III Guaranty, any failure by SI III to perform obligated Shopoff to perform on its behalf. *See Id.* at ¶ 2.1. Shopoff's Guaranty extended to any amended obligations, as contemplated and agreed to by Placek and SI III, including specifically any revised payment schedules. Shopoff, as Guarantor, waived all rights to require DP Investors III to proceed against SI III first, and specifically allowed DP Investors III to maintain an action upon the Guaranty "whether or not action is brought against [SI III] and whether or not [SI III] is joined in any such action." *Id.* at ¶ 4.3 and 4.4. The Investors III Guaranty provides for costs and attorneys' fees for "any effort to enforce any terms of" it, regardless of which party prevails. *Id.*

4

at ¶ 13. The Investors III Guaranty also required William Shopoff to stay informed of the financial condition of SI III and the status of payments to Plaintiffs. *See Id.* at ¶ 2.1.

### C. Plaintiffs Exercised the Put Options and SRI's and Shopoff's Failure to Fulfill their Obligations

Plaintiffs DP SLFI and DP Investors III timely exercised the put options contained in the LFI Put Agreements. Placek Aff, ¶ 10. As a result, SI III's obligations under the LFI Put Agreements were triggered. Under the DP SLFI Agreement, SI III was required to pay DP SLFI $9,440,000.00. *See Id.* SI III fulfilled this obligation. *Id.* Under the Investors III Agreement, SI III was required to pay DP Investors III according to the following schedule: (i) $368,755.00 on September 30, 2014; (ii) $1,253,758.00 on September 30, 2015; (iii) $1,253,758.00 on September 30, 2016; and, (iv) $1,253,758.00 on September 30, 2017. *See Id.* at ¶ 11; *see also* Exhibit C, ¶ 3.d. All payments were to be made by wire to Plaintiffs' New York bank accounts. *See* Placek Aff., ¶ 7.

After making a partial payment on the first installment, SRI defaulted on the remainder, including the subsequent installment in 2015. *See Id.* at ¶ 12. SRI's failure to comply with its obligations under the Investors III Agreement forced Placek, on behalf of Investors III, to renegotiate the payment schedule, with the expectation that SRI would make the required payments. *See Id.* at ¶ 12. By letter agreement dated May 1, 2017, the parties agreed to a revised payment schedule, which required the following payments:

5

| Date | Amount |
|---|---|
| 5/1/17 | 250,000 |
| 6/1/17 | 250,000 |
| 7/1/17 | 250,000 |
| 8/1/17 | 250,000 |
| 9/1/17 | 250,000 |
| 9/30/17 | 1,253,748 |
| 10/1/17 | 250,000 |
| 11/1/17 | 250,000 |
| 12/1/17 | 250,000 |
| 1/1/18 | 250,000 |
| 2/1/18 | 250,000 |
| 3/1/18 | 250,000 |
| 4/1/18 | 250,000 |

*See* Placek Aff., ¶ 13; Exhibit E.

SI III, controlled by SRI and both William and Cindy Shopoff, repeatedly missed several of these payments forcing Placek, on behalf of DP Investors III, to renegotiate a payment schedule once again. *See* Placek Aff., ¶ 14. By letter agreement on November 19, 2017, the parties agreed to the following schedule:

| Date | Amount |
|---|---|
| Dec 2017 | 25,000 |
| 12/29/17 | 200,000 |
| 1/5/18 | 35,000 |
| 2/5/18 | 35,000 |
| 3/5/18 | 70,000 |
| 4/5/18 | 35,000 |
| 5/5/18 | 35,000 |
| 6/5/18 | 35,000 |
| 7/5/18 | 35,000 |
| 8/5/18 | 35,000 |
| 9/5/18 | 35,000 |
| 10/5/18 | 2,400,000 |

*See* Placek Aff., ¶ 14; Exhibit F. The agreement also required two large payments upon the sale of two large commercial projects, El Monte (Brookside) and the Groves. *See* Placek Aff., ¶ 15; Exhibit F, ¶ at p.3. For El Monte (Brookside), SI III was required to pay DP Investors III $250,000 upon the sale, which was expected by January 15, 2018. For Groves, SI III was

required to pay DP Investors III $275,000 upon the sale, which was expected by March 15, 2018. *See* Placek Aff., ¶ 15; Exhibit F, at p. 3. The agreement mandated, in no uncertain terms, that that "[i]n no event shall the El Monte or the Groves payments be made later than [March 31, 2018]. *See* Placek Aff., ¶ 15; Exhibit F, at p. 3. While SI III is current on this revised payment schedule, it defaulted on the El Monte and the Groves payments. *See* Placek Aff., ¶ 16. Indeed, Plaintiffs are aware that the El Monte project sold on February 28, 2018, but SI III has not made payment on that obligation. *See Id.*

Also, in with the above payments due under the LFI investment, SI III also entered into a Purchase and Sale Agreement with Placek on behalf of Equity Trust Company dba Sterling Trust, Custodian FBO David A. Placek, IRA through which it purchased partnership interests in LF1 from Placek for $230,000. *See* Placek Aff., ¶ 17; see also Ex. G. The purchase price for the interests was broken down into two payments, a $160,000 cash payment and $70,000 broken down as follows: (i) $6,250 on or before September 30, 2014; (ii) $21,250 on or before September 30, 2014; (iii) $21,250 on or before September 30, 2016; and, (iv) $21,250 on or before September 30, 2017. Placek Aff., ¶ 17. While SI III made the initial $160,000 payment, it has failed to make any if the installment payments for the $70,000 owed. Placek Aff., ¶ 18. Based on a 30% interest rate, SI III owes Placek $105,244 for the IRA payments.

As a result of SI III failure to make the requisite payments to DP Investors III in accordance with the Investors III Agreement, and the amended payment schedules that arose out of SI III's breaches of the Investors III Agreement, Shopoff's obligation under the Guaranty has been triggered. However, to date, Shopoff has not made any payments to Plaintiffs in connection to a default by SI III. Placek Aff., ¶ 27. Shopoff's failure to pay Placek, despite his obligation to do so under the Investors III Guaranty, includes the $250,000 payment due following the sale

of the El Monte project in February 2018 and the $275,000 payment due following the sale of the Groves in March 2018. In light of the foregoing, it is an undisputed fact that William Shopoff owes this amount to DP Investors III and Placek. William Shopoff also owes $105,244 in defaulted IRA payments.

### D. Placek Invested in a Second Land Fund Project Guaranteed by William Shopoff and the Shopoff Revocable Trust

Following the closing of the Shopoff Land Fund I transaction in or around February 2014, Placek agreed to invest in another SRI fund, LF2, through agreements with another SRI entity, Shopoff Investors IV, L.P. ("SI IV"). *Id.* at ¶ 19. In order to invest in LF2, Placek again created two entities, DP SLF II and DP SLF II Member. *Id.* Both entities maintained a principle place of business in New York under a New York addresses and maintained New York bank accounts. Like the LF1 investment, the LF2 investment was broken down into two agreements: (i) Limited Partnership Put Agreement between DP SLF II, LLC and SI IV ("DP SLF II Agreement"); and (ii) Limited Partnership Put Agreement between DP SLF II Member and SI IV ("Member Agreement"). *See Id.* at ¶ 20.

Pursuant to the DP SLF II Agreement, DP SLF II contributed $3,501,450 to LF2 in exchange for a put option in which SI IV was required to purchase DP SLF II's interest in the Shopoff Land Fund II for $6,050,506. *Id.* at ¶ 21. Additionally, pursuant to the Member Agreement, DP SLF II Member contributed $499,410 in the LF2 in exchange for a put option for a purchase price of $1,498,230. *Id.* at ¶ 22. The Member Agreement also required SI IV to pay DP SLF II Member according to the following schedule, independent of the purchase price: (i) $90,000 on the funding date; (ii) $155,000 no later than June 30, 2014; and (iii) $250,000 for seven consecutive years on the anniversary of the funding date, totaling $1.75 million. Placek Aff. ¶ 23; *see* Exhibit H.

Similar to the LFI agreement, William Shopoff, individually, and William Shopoff and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, guaranteed all SI IV obligations under the Member Agreement, including all amounts due upon default by Shopoff Investors IV, L.P. *See* Placek Aff, ¶ 24. As with the Investors III Guaranty, the Investors IV Guaranty required its Guarantors to pay "all amounts which are due and payable under the [Member Agreement], when and as required under the [Member Agreement], and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by Placek or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving DP SRII Member or Guarantor)." Exhibit I, ¶ 1.1.

Additionally, the Guaranty entitled DP SRII Member to costs and attorneys for "any effort to enforce the terms of" the Guaranty, regardless of which party prevails. *See* Exhibit I, ¶13. It also provided that Placek could maintain an independent action against Shopoff, individually, and against William and Cindy as Trustees, irrespective of whether Placek pursued an action against SI IV *See* Exhibit I, ¶ 4.4. And, the Investors IV Guaranty required the Guarantors to remain informed of SI IV's financial status and adherence to its payment obligations under the Member Agreement. *See* Exhibit I, ¶ 5.1.2.

### E. SRI Defaulted on the LF2 Payments

Placek timely exercised the put option under the DP SLF II Agreement and the Member Agreement. Placek Aff. ¶25. All payments were to be made by wire to Plaintiffs' New York bank accounts. Placek Aff. ¶19. Pursuant to the Member Agreement, SI IV has made only one of these payments in full on April 15, 2015. *Id. at* ¶ 25. SI IV has paid only $125,000 of the 2016 payment, missed entirely the 2017 payment, and is expected again to miss the payment due on April 15, 2018. *Id.* Under the Member Agreement, late payments

9

accrue interest at a rate of 20% per year. *Id.* To date, SI IV, controlled by SRI and William Shopoff, owes DP LFII Member at least $585,895, including interest on the two defaulted payments. *Id.*

William Shopoff and Cindy Shopoff are aware of SI IV's missed payments, as principals of SRI. Placek Aff. ¶ 29. Nevertheless, both William Shopoff individually and William Shopoff and Cindy Shopoff as Trustees of the Shopoff Revocable Trust, have failed to provide payment to Plaintiffs under the Investors IV Guaranty. Pursuant to the terms of the Investors IV Guaranty, it is undisputed that William Shopoff and the Shopoff Revocable Trust, through William and Cindy Shopoff as Trustees, must pay DP SRII Member at least $585,895 under the Member Agreement.

**F. Shopoff has Acknowledged the Debt and His Failure to Pay**

Starting from when the first payments became due, and were missed, under both the LF1 and the LF2 agreements, Placek has repeatedly demanded payment from Shopoff. Placek Aff, ¶ 28. Those repeated demands for payment were often greeted with acknowledgements of the failed payments, and promises to pay in the future. Placek Aff, ¶ 29. In addition to the agreements memorializing the payments and their due dates, Shopoff himself has acknowledged these debts by text message and by email to Placek. See *Id.*

**ARGUMENT**

**A. Jurisdiction and Venue are Proper**

Pursuant to CPLR § 302, the Defendants are subject to personal jurisdiction in New York because they have transacted business in New York and availed themselves of New York law by entering into a guaranty agreement with a New York company for payments to be made into New York. Venue is proper in New York County under CPLR § 503(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New York County.

### B. Plaintiff is Entitled to Summary Judgment on Payment of the Obligations under the Put Agreements Pursuant to the Guarantees

CPLR § 3213 allows a party to move for summary judgment "when an action is based upon the payment of money only." C.P.L.R. § 3213. The purpose of the rule is to provide "a speedy and effective means of securing a judgment on claims presumptively meritorious." *Interman Indus. Prods., Ltd. V. R.S.M. Electron Power*, 37 NY2d. 151, (1975); see also David D. Siegel, New York Practice 448 (3d ed. 1999) ("CPLR 3213 recognizes that some claims have greater presumptive merit than others and should have easier access to the courts than an ordinary plenary action gets."). Thus, "[a] plaintiff makes out a prima facie case for summary judgment in lieu of complaint by proof of an instrument and the defendant's failure to make payment according to its terms." *Seaman-Andwall Corp. v. Wright Mach. Corp.*, 295 N.Y.S.2d 752 (1st Dept. 1968), aff'd, 29 NY2d 617, (1971). A court will consider outside proof if it is "simple proof of nonpayment or a similar de minimis deviation from the face of the document. *Weissman v. Sirnorm Deli, Inc.*, 88 N.Y.S.2d 437, 444 (1996) (citing *Bank Leumi Trust Co. v. Rattet & Liebman*, 182 A.D.2d 541, 542 (granting motion under CPLR 3213 and allowing outside evidence to show readily accessible interest rate).

As described below, Defendant Guarantors have unconditionally obligated themselves to make all payments defaulted upon under the Put Option Agreements by SI III and SI IV. The amounts owed under those agreements are certain, and they have not been paid by SI III and SI IV. Pursuant to these undisputed facts, Defendant Guarantors are now obligated to make these payments, and Plaintiffs' motion should be granted under CPLR § 3213.

#### 1. The Guarantees are Instruments for the Payment of Money Only

An instrument for the payment of money only is "a written unconditional instrument, evidencing an obligation to pay a sum at a certain time or over a stated period, a requirement which

11

may be satisfied by correspondence signed by the party to be charged." *Barraco v. Rosendale*, 558 N.Y.S.2d 240, 241 (3rd Dep't 1990). A party's guaranty of another's payment obligations "is clearly an instrument for the payment of money only upon which a motion pursuant to CPLR 3213 may be brought." *GSO RE Onshore LLC v. Sapir*, 2010 NY Slip Op 52138(U), ¶ 5 (Sup. Ct., NY County, Nov. 24, 2010) (citing *First Interstate Credit Alliance v Sokol*, 579 N.Y.S.2d 653 (1st Dept 1992). Importantly, "the fact that reference must be made to documents beyond the Guaranty does not take it out of the purview of CPLR 3213, because liability under a guaranty necessarily depends on the existence of a third party's obligation defined in other documents." *Id.* (citing *Bank of Am., N.A. v Solow*, 862 N.Y.S.2d 812 (Sup Ct, NY County, 2008), *affd* 874 N.Y.S.2d 48 (1st Dept 2009)); *see also UBS Commercial Mortg. Tr. 2007-FL1 v. Garrison Special Opportunities Fund L.P.*, 938 N.Y.S.2d 230, 230 (Sup. Ct., NY County, March 8, 2011) ("A guaranty may be the proper subject of a motion for summary judgment in lieu of complaint whether or not it recites a sum certain, and the need to consult the underlying documents to establish the amount of liability does not affect the availability of CPLR 3213.").

Defendants William Shopoff and William and Cindy Shopoff as Trustees of the Shopoff Revocable Trust have provided guarantees for the payment of a sum certain under the Put Option Agreements. With respect to the investment in LF1, William Shopoff, through SI III, agreed to pay DP Investors III, $250,000 upon the sale of the El Monte project and $275,000 upon the sale of the Groves project. The El Monte project sold on February 28, 2018, but in any event, both payments were due on March 31, 2018, irrespective of a sale. Finally, under the purchase and sale agreement between SI III and Placek for payments related to Placek's IRA, SI III owes Placek $105244.00. Under the Investors III Guaranty, William Shopoff "irrevocably, absolutely, and unconditionally guarantee[d] and promise[d] to pay to and for the benefit of Placek . . . on demand

12

after the occurrence or existence of any default . . . all amount which are due and payable" under the Investors III Agreement. Exhibit D, ¶ 1.1.

Similarly, with respect to the investment in LF2, William Shopoff, through SI IV, agreed to pay seven consecutive installments of $250,000 each year starting in 2015 under the Member Agreement. SI IV failed to make full payment in 2016, paying only $125,000, and failed to make the 2017 payment altogether. At 20% interest on these payments SI IV owes DP SLF II Member $585,895. Under the Investors IV Guaranty, William Shopoff individually and William Shopoff and Cindy Shopff, on behalf of the Shopoff Revocable Trust "irrevocably, absolutely, and unconditionally guarantee[d] and promise[d] to pay to and for the benefit of Placek . . . on demand after the occurrence or existence of any default . . . all amount which are due and payable" under the Investors III Agreement. Exhibit I, ¶ 1.1. Pursuant to the Investors IV Guaranty that amount certain is now owed by William Shopoff and the Shopoff Revocable Trust.

Several court in New York have held that a guaranty is subject to summary judgment under CPLR § 3213 under similar facts. *See First Interstate Credit All., Inc. v. Sokol,* 579 N.Y.S.2d at 654 (finding that a guaranty of the balance due on an equipment lease was is clearly an instrument for the payment of money only upon which a motion pursuant to CPLR § 3213 may be brought"); *Torres & Leonard, P. C. v. Select Prof'l Realties, Ltd.,* 118 A.D.2d 467, 468, 499 N.Y.S.2d 707, 708 (1st Dep't. 1986) (payments due and owing under a guaranty supporting settlement payments supported an application for relief under CPLR § 3213); *Citibank N.A. v. Schaffran,* 96 A.D.2d 726, 726, 465 N.Y.S.2d 87 (App. Div. 1983) (the guaranty of payment under a bank note qualified as a payment of money only under CPLR § 3213).

13

Accordingly, the Guaranty Agreements guaranteeing obligations of the SRI entities SI III and SI IV, amounting to a sum certain of $475,000, $585,895, and 105,244. respectively, are instruments for the payment of money only under CPLR 3213.

### 2. Plaintiffs Are Entitled to Summary Judgment on the Guarantees

Under CPLR § 3213, a plaintiff makes out a prima facie case "by proof of an instrument and the defendant's failure to make payment according to its terms." *Seaman-Andwall Corp. v. Wright Mach. Corp.*, 295 N.Y.S.2d 752 (1st Dept. 1968), aff'd, 29 NY2d 617, (1971). A straightforward unconditional promise to pay under a guaranty and an acknowledgment by Defendants of the amount owed constitute a prima facie case. *Garrison Special Opportunities Fund*, 938 N.Y.S.2d at 230.

Plaintiffs have submitted evidence showing the existence of the Guarantees and the unconditional obligations to pay in the event of default thereunder. *See* Exhibits D and I. Plaintiffs have provided the underlying Put Agreements under which the obligations arise, including the amended payment schedules agreed to by the parties. Exhibits B, C, E, F, and H. Plaintiffs have shown that the SRI entities to those Put Agreements have failed to make payment under the terms of those agreements. *See* Placek Aff., ¶¶ 12-16 and 25-28. And, Plaintiffs have established that the obligations under those agreements are past due. *Id*. Accordingly, Plaintiffs have established a prima facie case entitling them to summary judgment.

### 3. Plaintiff is Entitled to All Outstanding Principal, Interest, Attorneys' Fees and Costs Under the Guarantees

Plaintiffs are entitled to all amounts due and owing under the Put Agreements and interest in accordance with the Guarantees. Accordingly, Plaintiffs are entitled to judgment according to the following:

14

1) DP Investors III has a judgment and recover of Defendant William Shopoff, individually, in the amount of $525,000 plus interest, court costs, and attorneys' fees.;

2) Plaintiff David Placek, on behalf of Equity Trust Company dba Sterling Trust, Custodian FBO David A. Placek, IRA, has a judgment and recover of Defendant William Shopoff in the sum of $105,244 plus interest, costs, and attorneys' fees;

3) Plaintiff DP SLF II Member in the amount of $585,895 against William Shopoff and William and Cindy Shopoff as Trustees for the Shopoff Revocable Trust; and

4) Attorneys' fees for all efforts expended in enforced the Guaranties, including this motion for summary judgment in lieu of complaint, to be submitted upon request by the Court.

## CONCLUSION

For the reasons set forth above, this Court should grant summary judgment in lieu of complaint in favor of Plaintiffs, awarding Plaintiffs all amounts owed by Defendants under the Guaranty Agreements as well as all attorneys fees and costs associated with enforcing them.

Dated: April 9, 2018

        Respectfully submitted,

        SPIRO HARRISON

        By: s/ David Harrison
            David Harrison
            119 W. 24th Street, 4th Floor
            New York, NY 10011
            Tel.: (973) 232-0882
            Fax: (973) 232-0887
            *Attorneys for Plaintiff*

16