USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/24/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
DAVID PLACEK; DP INVESTORS III, LLC; and :
DP SLF II MEMBER, LLC; :
:
                                    Plaintiffs, :
                                                :        18-CV-4326 (VEC)
            -against-                           :
                                                :        ORDER AND OPINION
WILLIAM SHOPOFF, individually, and WILLIAM :
AND CINDY SHOPOFF, as TRUSTEES FOR THE :
SHOPOFF REVOCABLE TRUST; :
                                                :
                                    Defendants. :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        Plaintiffs David Placek, DP Investors III, and DP SLF II Member—the latter two of

which are single-member LLCs that Placek controls (together, the "LLC Plaintiffs," and with

Placek, "Plaintiffs")—seek to enforce guaranty agreements they entered into with Defendants

related to Plaintiffs' investments in certain real estate funds.  Defendants moved to dismiss or

transfer the matter.  For the reasons discussed below, the Court GRANTS Defendants' motion

and transfers the case to the Central District of California.

## I.        BACKGROUND

        On April 9, 2018, Plaintiffs initiated this action in New York Supreme Court for New

York County, proceeding by way of summary judgment in lieu of a complaint.[1]  *See* Notice of

Motion for Summary Judgment in Lieu of a Complaint ("SJ Notice") [Dkt. 15-2]; Memorandum

of Law in Support of Summary Judgment in Lieu of a Complaint ("SJ Mem.") [Dkt. 15-3].

---

[1]        This is a mechanism of New York civil procedure for actions "based upon an instrument for the payment of
money only . . . ."  *See* N.Y. C.P.L.R. § 3213.

According to Plaintiffs, they want to enforce two guaranty agreements[2] (the "Guaranty Agreements") that relate to investments Plaintiffs made in commercial real estate funds pursuant to separate investment agreements (the "Put Option Agreements"). *See* SJ Mem. at 1.[3] Plaintiffs invested several million dollars in the real estate funds as a condition of Placek's employment by Shopoff Realty Investments ("SRI"), [4] and did so in reliance on the Guaranty Agreements.[5] *Id.* at 1–4, 8–9. Plaintiffs allege that the Guaranty Agreements have been triggered by breaches of the Put Option Agreements—in particular, the LLC Plaintiffs sought to exercise the put options, but the counterparties (which are other entities controlled by Defendants) defaulted. *Id.* at 2, 5–7, 9–10. Defendants have, in turn, breached their obligations under the Guaranty Agreements to pay Plaintiffs. *Id.* at 2, 7–8, 10. Defendant William Shopoff has allegedly acknowledged the debts and promised to satisfy them. *Id.* at 10.

Defendants removed the matter to this Court on May 15, 2018. *See* Notice of Removal ("Removal") [Dkt. 1]. They then moved to dismiss for lack of personal jurisdiction and venue, or, in the alternative, to transfer the case to the District Court for the Central District of

---

[2]    The Guaranty Agreements are governed by California law. *See* Investors III Guaranty [Dkt. 13-3] ¶ 8; SLF II Guaranty [Dkt. 13-5] ¶ 8.

[3]    *See also* Investors III Put Option Agreement [Dkt. 13-2]; SLF II Put Option Agreement [Dkt. 13-4].

[4]    Defendants assert that Placek's work for SRI was to be performed from his home in New Jersey, and that SRI agreed to rent space in a shared office suite in New York "to give Placek's activities the cache [sic] of a New York mailing address, and a conference room in which he could meet business contacts who would find it easier to travel to Manhattan versus New Jersey." Memorandum of Law in Support of Defendants' Motion to Dismiss or Transfer ("Mem.") [Dkt. 12] at 3; Declaration of William Shopoff ("Shopoff Decl.") [Dkt. 13] ¶ 6. They further contend that Placek nevertheless mostly worked from his home in New Jersey, and those who worked with or under Placek were located in SRI's office in California. Mem. at 3; Shopoff Decl. ¶¶ 7–8.

Defendants also report that Placek is pursuing arbitration related to his employment agreement in Orange County, California as required under that agreement. *See* Employment Agreement [Dkt. 13-1] ¶ 9; Reply Memorandum in Further Support of Defendants' Motion to Dismiss or Transfer ("Reply") [Dkt. 25] at 3.

[5]    Placek formed Plaintiffs DP Investors III and DP SLF II Member to invest in the real estate funds. *See* SJ Mem. at 3, 8. DP Investors III and DP SLF II Member are both single-member Delaware LLCs owned by Placek. *Id.* at 3; Affidavit of David Placek in Support of Summary Judgment ("Placek SJ Aff.") [Dkt. 15-4] ¶¶ 7, 19.

California.  *See* Notice of Motion to Dismiss or Transfer ("Notice of Mot.") [Dkt. 11]; Mem.

After the parties' initial conference, the Court stayed discovery and briefing on Plaintiffs' motion

for summary judgment, and scheduled briefing on the motion to dismiss or transfer.  *See* Order,

June 22, 2018 [Dkt. 22].

## II.     DISCUSSION

### A.  Legal Background

Although challenges to personal jurisdiction are generally resolved before addressing

motions to transfer venue, there is no legal requirement to do so.  *Enigma Software Grp. USA,*

*LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 408 (S.D.N.Y. 2017) (quoting *Everlast World's*

*Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013))

(internal quotation marks omitted).  "A court may instead address venue applications at the

threshold, when there is a sound prudential justification for doing so, because neither personal

jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction

is."  *Id*. (quoting *Everlast*, 928 F. Supp 3d. at 741) (internal quotation marks omitted).  "Where

personal jurisdiction would likely exist in the transferee district over a defendant who contests

personal jurisdiction in the Southern District of New York, it is prudentially appropriate to

address venue first since a decision to transfer would render personal jurisdiction analysis with

respect to the Southern District of New York irrelevant."  *Id*. at 408–09 (quoting *Everlast*, 928 F.

Supp 3d. at 742) (internal quotation marks and alteration omitted).  If a transfer would be in the

interest of justice, a court can do so even if it lacks personal jurisdiction over defendants, and

regardless of whether venue would be proper in the court's district.  *Id*. at 409 (quoting *Volk*

*Corp. v. Art–Pak Clip Art Serv.,* 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977)).  *See also Tlapanco*

*v. Elges*, 207 F. Supp. 3d 324, 326 n.1 (S.D.N.Y. 2016) ("A district court may transfer venue

even if it lacks personal jurisdiction over the defendants.  Accordingly, the Court may resolve the threshold question of venue before addressing jurisdiction.") (internal quotation marks and citations omitted), *reconsideration denied*, No. 15-CV-2852 (AJN), 2017 WL 4329789 (S.D.N.Y. Sept. 14, 2017).

In general, a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).  Actions removed from state court are, however, removed "to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Relying on § 1441(a), courts have ruled that § 1391 does not apply to a case that has been removed from state court; venue for such a case is proper in the District Court that embraces the state court from which the case was removed.  *See, e.g.*, *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 235 (S.D.N.Y. 2013) (citing, *inter alia*, *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998)).

Section 1404 of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Courts have "wide latitude to decide whether to transfer venue."  *Enigma Software*, 260 F. Supp 3d at 406 (quoting *Everlast*, 928 F. Supp. 3d. at 743) (internal quotation marks omitted).  Courts first determine whether the action could have been

4

brought in the prospective transferee district, and then consider whether transfer would be appropriate. *Id.* at 407 (quoting *Everlast*, 928 F. Supp 3d. at 743). To guide this inquiry, courts balance a number of factors including "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Id.* (quoting *Everlast*, 928 F. Supp 3d. at 743) (internal quotation marks omitted). *See also Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016) (quoting *Steck v. Santander Consumer USA Holdings Inc.*, No. 14–cv–6942 (JPO), 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015)) (enumerating the same factors).

This list of factors is not exhaustive; there is no rigid formula for balancing them; and no single factor is determinative. *Dickerson*, 315 F.R.D. at 27 (citing *Pausch Med. GmbH v. Pausch LLC*, No. 14–cv–1945 (PAC), 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015) and quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000)). *See also Tlapanco*, 207 F. Supp. 3d at 328 ("No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case.") (quoting *Smart Skins LLC v. Microsoft Corp.*, No. 14–CV–10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted)). Courts have "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). The party seeking transfer bears the burden of proof, and must present clear and convincing evidence to warrant transfer.

*Dickerson*, 315 F.R.D. at 27 (citing *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

### B. Venue in the Southern District is Not Improper

As discussed above, a court can appropriately consider venue motions before addressing personal jurisdiction, particularly when the transferee court would have personal jurisdiction over the complaining defendants. Courts have general personal jurisdiction over individuals in their state of domicile. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011)); *Yagman v. Kelly*, No. 17-CV-6022-MWF-PJWX, 2018 WL 2138461, at *5–6 (C.D. Cal. Mar. 20, 2018) (citing *Daimler* and finding the court lacks general jurisdiction over individual defendants domiciled in Pennsylvania, Connecticut, and Maryland). The Central District of California would plainly have personal jurisdiction over Defendants, as each is domiciled in Orange County, California, which falls within the Central District of California. *See* Removal ¶¶ 7–8. Thus, the Court finds it appropriate to address Defendants' motions as to venue prior to addressing their motion to dismiss for lack of personal jurisdiction.

The Court denies Defendants' motion to dismiss for lack of venue, which mistakenly relies on 28 U.S.C. § 1391; as discussed above, the general venue statute is not applicable to removed cases. *See* Mem. at 12–13. (In any event, Defendants appear to have abandoned this argument in Reply. *See* Reply at 12–15.) Venue properly lies in this District because it embraces the state court from which this case was removed, even if venue would have been lacking had the case originally been filed here.

### C. The Court Transfers the Case to the Central District of California

The Court begins its transfer analysis by finding that this case could have been brought in the Central District of California. As discussed above, both Defendants are domiciled in Orange County, California. Accordingly, the case could have been brought in the Central District of California pursuant to the general venue statute. *See* 28 U.S.C. § 1391(b)(1).

The Court next considers and weighs the relevant factors for transfer.[6]

### i. Convenience of the Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Dickerson*, 315 F.R.D. at 27 (quoting *Jackson v. Avis Rent A Car Sys., LLC*, No. 14–cv–1658 (LLS), 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015)) (internal quotation marks omitted). The convenience of non-party witnesses weighs more heavily than the convenience of party witnesses. *Id.* (quoting *McGraw–Hill Companies Inc. v. Jones*, No. 12–cv–7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014)). "The party moving for transfer must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Id.* (quoting *Kiss My Face Corp. v. Bunting*, No. 02–cv–2645 (RCC), 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003)) (internal quotation marks omitted). That said, this is not merely a consideration of numerosity; the Court must evaluate qualitatively the materiality of the testimony expected from the various witnesses. *Id.* (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)) (internal quotation marks omitted).

---

[6] In their Reply, Defendants confusingly blend their statutory venue transfer argument with an argument to transfer based on *forum non conveniens*. *See* Reply at 12–15. Because Defendants initially moved to transfer venue pursuant to 28 U.S.C. § 1404(a), the Court will continue to construe their motion as such, and will consider the *forum non conveniens* arguments contained in their Reply as they would apply to the analogous transfer factors.

Defendants have identified two key witnesses whom they believe will be "highly inconvenienced" by litigation in New York: Defendants' transactional attorney, Stevan J. Gromet, and the Chief Financial Officer of SRI, Lisa Jack, both of whom Defendants claim "have knowledge of Defendants' business dealings with Placek" and "reside and work in Southern California." Mem. at 6, 14; Decl. ¶ 19. They also recognize that Plaintiffs' witnesses in New York render this factor neutral. *See* Reply at 14. Plaintiffs contend that Defendants did not describe their witnesses' potential testimony, and Plaintiffs argue that Defendants' CFO would not have relevant testimony because she was not involved in the negotiation of the contracts at issue. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Transfer ("Opp.") [Dkt. 23] at 20. Plaintiffs identify as their non-party witnesses their counsel, Wayne Landesman and Brian Sampson, who assisted in the negotiation of the Guaranty Agreements, and Plaintiffs' tax advisor, Ms. Melendez, who purportedly "has relevant testimony regarding the receipt of payments and how those payments were structured." Opp. at 6–8, 20. Plaintiffs assert that they are all located in the Southern District of New York and would be "highly inconvenienced" by having to travel to California to testify. *Id*. at 20–21.

The Court finds that this factor is effectively neutral. Both Plaintiffs and Defendants have pointed to witnesses who would be inconvenienced if they had to travel to the other parties' preferred forum. That the Plaintiffs have pointed to three witnesses rather than Defendants' two, and that Plaintiffs provided a meager bit more detail as to anticipated testimony of their witnesses, does not affect the Court's determination.

### ii. Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-

movant." *Dickerson*, 315 F.R.D. at 29 (quoting *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F.

Supp. 3d 385, 399 (S.D.N.Y. 2014)) (internal quotation marks omitted). *See also Enigma*

*Software*, 260 F. Supp. 3d at 411 ("A defendant moving for transfer must show both that the

original forum is inconvenient for it and that the plaintiff would not be substantially

inconvenienced by a transfer.") (quoting *SBAV LP v. Porter Bancorp, Inc.*, No. 13 CIV. 372

PAE, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (internal quotation marks omitted)).

Convenience to counsel, however, is not relevant to the transfer analysis. *See Dickerson*, 315

F.R.D. at 29 (quoting *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, No. 13–cv–

1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013)).

Defendants assert that this factor is effectively neutral because litigation for them in New

York would be inconvenient, while transferring the case to California would inconvenience

Plaintiffs. Mem. at 15–16. They note, however, that because Placek initiated arbitration in

California, he will have to travel to California anyway, which might make litigation in California

less inconvenient to Plaintiff than it otherwise might be. Reply at 14. Plaintiffs disagree that this

factor is effectively neutral, arguing that Placek's family obligations make it very inconvenient

for him to prosecute this lawsuit in California, while Defendants have the financial means to

travel to this Court. *See* Opp. at 21.

The Court finds that, as with the convenience of the witnesses, this factor is also neutral.

Both Plaintiffs and Defendants would be inconvenienced by having to litigate in the others'

preferred forum. Contrary to Defendants' argument, the Court does not find that Placek's

arbitration in California renders litigation of this suit convenient in the Central District of

California. Just because Placek is obligated to arbitrate other disputes there does not make it convenient for him to litigate *this* (or any case) in California.[7]

### iii. Location of Relevant Documents and Access to Sources of Proof

"The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of the technological age in which we live, where there is widespread use of, among other things, electronic document production." *Tlapanco*, 207 F. Supp. 3d at 330–31 (quoting *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010)) (internal quotation marks omitted). For this factor to favor either venue, a party must show a "concrete illustration of inconvenience . . . arising out of access to documents or other non-testimonial proof . . . ." *Enigma*, 260 F. Supp. 3d at 412 (quoting *SBAV LP*, 2013 WL 3467030, at *11) (internal quotation marks omitted).

Defendants contend that they will likely produce more documents than Plaintiffs, and their documents and other potential sources of proof are located in California. Mem. at 15. They also contend that Plaintiffs' documents and sources of proof will be at Placek's home in New Jersey rather than in New York. *Id.* Plaintiffs argue that their bank records, which are located in New York, are the most important documents. *See* Opp. at 22–23.

This factor is neutral as to the Court's transfer analysis. Given the state of current technology, the location of documents is effectively irrelevant, as records located in either forum can be easily transmitted for litigation elsewhere. Neither side has presented any facts that suggest it will be difficult to make documents available for litigation in the other parties' desired forum.

---

[7]    In fact, the Court surmises that the Orange County arbitration is also inconvenient to Plaintiff.

### iv. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tlapanco*, 207 F. Supp. 3d at 331 (quoting *Steck*, 2015 WL 3767445, at *6) (internal quotation marks omitted). "The 'locus of operative facts' is the place where the 'acts or omissions for which Defendants could be held liable occurred.'" *Id*. (quoting *Solar v. Annetts,* 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010)). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Enigma*, 260 F. Supp. 3d at 410 (quoting *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997)) (internal quotation marks omitted).

"Transfer is generally appropriate where a cause of action arises from claims of alleged wrongdoing in the proposed transferee district." *Tlapanco*, 207 F. Supp. 3d at 331 (quoting *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 92–93 (S.D.N.Y. 1987)) (internal quotation marks and alteration omitted). When there is no showing that any of the operative facts arose in the Southern District of New York, this factor substantially favors transfer. *Enigma*, 260 F. Supp. 3d at 410 (quoting *SBAV LP*, 2013 WL 3467030, at *4) (internal quotation marks omitted). That said, transfer is not precluded just because there is some connection between the operative facts and the initial forum, "so long as the transferee district has a stronger connection with the operative facts." *Tlapanco*, 205 F. Supp 3d at 331 (quoting *Gallagher*, 669 F. Supp. at 93) (internal quotation marks omitted).

When assessing the locus of operative facts for transfer of a contract dispute, courts in this District "consider[] where the contract was negotiated, formed, performed, and allegedly breached, giving particular weight to the site of performance." *Rhoda v. Rhoda*, No. 14-CV-6740 CM, 2014 WL 6991502, at *11 (S.D.N.Y. Nov. 19, 2014) (quoting *Age Grp. Ltd. v. Regal*

*Logistics, Corp.,* No. 06–CV–4328, 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 7, 2007)) (internal

quotation marks omitted).  When the thrust of the lawsuit is breach of contract, some courts place

particular focus on where the contract was performed and breached rather than where it was

proposed and negotiated.  *See, e.g.*, *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y.

2017) (quoting *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002)); *Age*

*Grp.*, 2007 WL 2274024, at *4 ("Moreover, as [plaintiff's] primary claims center on

[defendant's] alleged failure of performance and not on any matters relating to the formation or

negotiation of the contract, the Court places particular emphasis on the locus

of operative facts relating to the performance and alleged breach of the contract, as compared to

that of the negotiation and formation of the contract.  This emphasis on the locus of operative

facts regarding contract performance and breach is in keeping with the practice of other courts in

this District considering similar motions to transfer breach of contract cases.") (citing same).

Defendants contend that the locus of operative facts is California because Plaintiffs'

claims derive from incidents that took place there, namely Defendants' failure to pay as required

by the Guaranty Agreements.  Mem. at 16.  Thus, the alleged wrongful acts and omissions took

place in California.  *Id*.  Plaintiffs argue that the locus of operative facts is the Southern District

of New York because that is where payment was to take place, and thus the breach of the

Agreement in the form of non-payment occurred in New York.  *See* Opp. at 21–22.  Although

they cite no law in this section of their argument, in arguing that venue is proper in this District,

Plaintiffs cited two cases to argue that venue is proper when defendants have been required to

make payments in New York.  *See id*. at 17–18 (quoting *Schindler v. Lyon*, No. 12-CV-5928 JFB

AKT, 2013 WL 4544263, at *10 (E.D.N.Y. Aug. 28, 2013) and citing *Saltzman v. Louisiana*

*Auction Exch., Inc.*, 997 F. Supp. 537, 541 (S.D.N.Y. 1998)).

Plaintiffs, in arguing that the locus of operative facts is New York because Plaintiffs operated out of New York and because payments from Defendants were to be paid to Plaintiffs' New York bank accounts, highlight cases in which the terms of the contracts explicitly required performance or payment in New York. In *Schindler*, for example, the court found venue proper in this District because "the alleged agreement required that defendant make payments to New York," and because, in turn, that is where the breach of that specific obligation occurred. *See* 2013 WL 4544263, at *10. Likewise, in *Saltzman*, the court found venue appropriate in this District based on a range of conduct and circumstances, including that "payment under the terms of the letter agreement was due to plaintiff in New York." 997 F. Supp. at 541. But here, the Guaranty Agreements make no reference to the location of payments or Plaintiffs' New York bank accounts—they do not mention New York at all. *See* Investors III Guaranty; SLF II Guaranty. The payment provisions in each Guaranty Agreement require payment of "all amounts which are due and payable under the Put Options, when and as required under the Put Options," but nothing in the Put Option Agreements mandates payment in New York, either. *See* Investors III Guaranty ¶ 1.1; SLF II Guaranty ¶ 1.1; Investors III Put Option Agreement; SLF II Put Option Agreement.[8] Thus, nothing in the Guaranty Agreements requires Defendants' performance—its payments—to take place in New York.

Instead, the Court finds that the primary locus of operative facts is the Central District of California, where Defendants breached their obligations. Although it appears that Plaintiffs' counsel negotiated the Guaranty Agreements from New York (and the Plaintiffs may have

---

[8] The Put Option Agreements require notices to be delivered to Placek's entities and counsel at New York addresses, but the payment provisions themselves do not require payment in any particular place or to any particular bank account. *See* Investors III Put Option Agreement ¶¶ 3, 7; SLF II Put Option Agreement ¶¶ 3, 9. (Note that the SLF II Put Option Agreement contains two provisions numbered ¶ 9; the Court here refers to the first of these (titled "Notices") on page five of this agreement.)

executed them here as well), the Court focuses on the location of Defendants' alleged breach because this case arises directly from the breach, not from the negotiation or execution of the Guaranty Agreements. *See, e.g.*, *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 CIV. 6751 PGG, 2013 WL 5312525, at *7 (S.D.N.Y. Sept. 23, 2013) ("[T]he locus of operative facts remains in the Central District of California. Plaintiff's claims stem from alleged misconduct by Welker—a bad faith margin call—during the performance of the contract in California, not from the initial negotiation of the agreement."). The Court finds that Defendants' alleged breach of the Guaranty Agreements—their failure to pay Plaintiffs, which, under the agreements was tied to no particular accounts or locations—occurred in California, where they reside, and where they were located when they allegedly failed to pay Plaintiffs amounts that were due. Other courts in this District have found that a party's breach of an agreement occurs where the breaching party is located, including cases in which the breach consisted of a failure to make a payment. *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 CIV. 2114 SAS, 2011 WL 3678134, at *4 (S.D.N.Y. Aug. 22, 2011) ("A breach of contract between two businesses located in different states will necessarily 'occur,' in the strictest sense of the word, in the home state of the breaching party . . . ."); *Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388, 390 (S.D.N.Y. 2005) ("Banner's obligation, to make payments to Largotta, was to take place from its office in Philadelphia; its alleged breach is therefore also situated in Philadelphia."); *Oubre v. Clinical Supplies Mgmt., Inc.*, No. 05 CIV. 2062 (LLS), 2005 WL 3077654, at *4 (S.D.N.Y. Nov. 17, 2005) ("CSM's performance, paying Oubre and issuing him stock and stock options, would naturally take place at CSM's headquarters in North Dakota. Thus . . . CSM's alleged breach occurred in North Dakota."); *Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd.*, No. 01 CIV. 1681 (HB), 2001 WL 1254839, at *4 n.8 (S.D.N.Y. Oct. 19, 2001)

("Ljungkvist also argues that she was injured by the defendants' failure to compensate her in New York pursuant to the contracts. . . . [T]he defendants['] alleged wrongful breach occurred in London where the withholding of money due on the contract took place.").  Accordingly, Defendants' alleged breach—the primary consideration in determining the locus of operative facts for this case—took place in the Central District of California.  That District thus has a stronger connection to the facts of this case, and this key factor weighs in favor of transfer.

### v.  Availability of Process to Compel Attendance of Unwilling Witnesses

Although a court generally cannot compel a non-party witness to travel more than 100 miles to testify, this factor becomes irrelevant when parties fail to produce affidavits from witnesses indicating that they would not voluntarily testify.  *See Tlapanco*, 207 F. Supp. 3d at 332 (citing Fed. R. Civ. P. 45; *EasyWeb Innovations, LLC v. Facebook, Inc.,* 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012); *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 482 (S.D.N.Y. 2009)).

Defendants argue that this Court cannot secure the attendance of California witnesses should they be unwilling to testify, but such witnesses could be compelled by the California court.  *See* Mem. at 17.  Nevertheless, they ultimately concede that this factor is neutral.  *See* Reply at 15.  Plaintiffs respond that Defendants' CFO could be compelled to testify in New York by virtue of her employment, and that videotaping testimony is an option for those who do not wish to travel to New York.  *See* Opp. at 22.

Neither Plaintiffs nor Defendants produced affidavits from potential witnesses indicating an unwillingness to testify voluntarily in this matter.  Accordingly, this factor is neutral in the Court's transfer analysis.

### vi. Relative Means of the Parties

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Tlapanco*, 207 F. Supp. 3d at 332 (quoting *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 290) (internal quotation marks omitted). But a party must provide proof of this potential hardship for a court to consider this factor: "where a plaintiff has not supplied the court with any documentation showing that transfer would be financially burdensome, this factor is neutral." *Id.* (quoting *Speedfit LLC v. Woodway USA, Inc.,* 53 F. Supp. 3d 561, 578 (E.D.N.Y. 2014)). *See also Dickerson*, 315 F.R.D. at 31–32 (affording "relative means" factor limited weight where plaintiff only offered an unsupported assertion to argue that litigating in the transferee district would be unduly burdensome).

Defendants assert that "Plaintiffs and Defendants likely have similar relative means and are equally equipped to bear the costs associated with proceeding in a distant forum," rendering this factor neutral. Mem. at 17. Plaintiffs respond (without citation or support) that Defendant William Shopoff is wealthy and maintains property all across the country, while Plaintiff Placek is not currently employed, is the primary caregiver to his children, supports his wife who works full-time, and has no other income aside from what he expected from these agreements, rendering the expense of a lawsuit in California burdensome. *See* Opp. at 23; Declaration of David Placek ("Placek Decl.") [Dkt. 24] ¶¶ 25–30. In their Reply, Defendants respond that Plaintiffs' arguments as to Defendants' means are "purely speculative." Reply at 15.

Notwithstanding Plaintiffs' arguments that Placek is in a weaker financial position than Defendants, none of the parties submitted any documentation showing that transfer would be financially burdensome, and, therefore, this factor is neutral.

### vii.   Forum's Familiarity with Governing Law

Familiarity with the governing law is generally given little weight when considering transfer because federal courts are equally capable of deciding issues of federal law, and federal courts are deemed capable of applying the substantive law of other states.  *See Dickerson*, 315 F.R.D. at 32 (citations omitted).  "The forum's familiarity with the governing law [is] one of the least important factors in determining a motion to transfer . . . ."  *Enigma*, 260 F. Supp. 3d at 412 (quoting *ACE Am. Ins. Co. v. Bank of the Ozarks,* No. 11 Civ. 3146 (PGG), 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012)) (internal quotation marks omitted).  A party seeking to invoke this factor as favoring transfer might point to "nuanced issues of . . . state law that [one] [c]ourt is materially more qualified to apply than [the other] court would be."  *Everlast*, 928 F. Supp. 2d at 747.

Defendants argue that this case involves breach of a contract expressly governed by California law, with which the transferee court is more familiar than this Court.  *See* Mem. at 17.  They emphasize that "this case will involve complex issues of California law, including the issue of whether this matter should proceed as an arbitration in Orange County, California."  Reply at 14.  Plaintiffs counter that this factor should be afforded little weight because the legal issue involved—breach of contract—is straightforward.  *See* Opp. at 23–24.

Were this case limited to straightforward analysis of a breach of contract, this factor would not weigh in favor of transfer.  Defendants' Reply, however, illustrates that they intend to argue that the arbitration clauses in the Put Option Agreements apply to the Guaranty Agreements because a dispute over the Guaranty Agreements "clearly relates" to the Put Option Agreements, Reply at 7–8, and because "California law also holds that where an agreement secures performance of another contract containing an arbitration clause, the arbitration clause

applies to both agreements." *Id*. at 9. This latter argument raises more nuanced and complicated

issues of California law that would involve assessing, *inter alia*, California contract

jurisprudence; California's public policy towards arbitration; how California law would consider

bonds, sureties, and guaranties; and what language is necessary under California law for one

contract to incorporate another contract by reference. *See* Reply at 9–12. Therefore, in this

instance, the Court finds that the Central District of California is materially more qualified to

adjudicate this case. Thus, this factor weighs in favor of transfer.

### viii. Plaintiff's Choice of Forum

"Although a plaintiff's choice of forum is accorded considerable weight in the § 1404(a)

balancing test, that choice merits less deference where, as here, the connection between the case

and the chosen forum is minimal." *Enigma Software*, 260 F. Supp. 3d at 411–12 (quoting *SBAV

LP*, 2013 WL 3467030, at *11; *Everlast,* 928 F. Supp. 2d at 748) (internal quotation marks and

alteration omitted). *See also Dickerson*, 315 F.R.D. at 32 (allocating plaintiff's choice of forum

substantially diminished weight where the selected forum was not plaintiff's home forum and

had only a limited connection to the operative facts of the action).

Defendants argue that Plaintiff's choice of forum should receive little weight because

there is little connection, if any, between the case and New York. *See* Mem. at 18. They also

contend that the provisions in the Put Option Agreements requiring mandatory arbitration in

Orange County apply to the Guaranty Agreements. *See* Reply at 13. *See also* Reply at 7–12;

Investors III Put Option Agreement ¶ 8; SLF II Put Option Agreement ¶ 9.[9] Plaintiffs argue that

there is a connection to New York—performance under the contract was due in New York,

performance and breach in the form of payment and non-payment were in New York, and

---

[9]     The SLF II Put Option Agreement contains two provisions numbered ¶ 9; the Court here refers to the second of these (titled "<u>Miscellaneous</u>") on page six of this agreement.

documents and witnesses are in New York.  *See* Opp. at 24.  They also note that Placek "resides in new Jersey [and] lives extremely close to the chosen district."  *Id.*

As discussed above, although there is some connection to New York, this case is more strongly connected to California.  Although the Guaranty Agreements were negotiated in part in New York, as discussed above, nothing in the Guaranty Agreements mandates performance in New York, and the alleged breach would have occurred in California.  Accordingly, at best, this factor weighs minimally in favor of denying transfer, but perhaps more practically should be considered neutral given the relatively limited connection of the case to this District.

### ix.  Trial Efficiency and the Interests of Justice

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy."  *Dickerson*, 315 F.R.D. at 32 (quoting *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005)) (internal quotation marks and alteration omitted).  A court may consider the amount and duration of litigation in the current forum.  *See id.* at 32–33; *Tlapanco*, 207 F. Supp. 3d at 332–33.

Defendants contend that this case would be more efficiently litigated in the Central District of California because a number of witnesses reside there, and hard copies of documents are there as well.  *See* Mem. at 18.  Transfer is in the interest of justice, Defendants contend, because California is the location of the alleged wrongful conduct, and Plaintiff Placek does not reside in New York.  *See id.* at 19.  Defendants also assert, *ipse dixit*, that because all of Plaintiffs' agreements require arbitration in Orange County, it would be efficient to transfer this case, as Placek is currently pursuing arbitration in California with regard to his employment

agreement.  Reply at 15.  Plaintiffs argue, *inter alia*, that the matter is already pending in this Court at the summary judgment stage.  *See* Opp. at 24–25.

The Court finds this factor to be neutral, and notes that the parties' arguments primarily recycle points made with regard to the other factors.  While the case is technically at the summary judgment stage, it is only so because Plaintiffs filed a motion for summary judgment in lieu of a complaint in New York state court, which was removed to this Court.  There have been minimal proceedings and no discovery in this Court since removal.  Nonetheless, the locations of some witnesses, some documents, and a separate arbitration in California do not make it more efficient for the Court to transfer the case—there are also documents and witnesses here, and the employment agreement arbitration is, as far as this Court is aware, distinct from the breach of contract at issue in this case.  Nor is it clear that Defendants will ultimately prevail in arguing that the arbitration clause in the Put Option Agreements applies to the Guaranty Agreements.

### x.  Weighing the Factors

As discussed above, most of the transfer factors are neutral.  The only factor that might counsel toward retaining the case in this District is Plaintiff's choice of forum, which the Court finds to be minimal, if not neutral.  But two factors counsel strongly in favor of transfer—the locus of operative facts lies in California and the Central District of California is better equipped to address the nuanced issues of California law that will likely arise in this case.  Accordingly, the Court transfers this case to the Central District of California.[10]

---

[10]     In a footnote at the very end Plaintiffs' Opposition, they ask that if the case is to be transferred, it be transferred to the District of New Jersey rather than to the Central District of California.  *See* Opp. at 25 n.6.  The Court denies this request.  Not only has there been no briefing on the appropriateness of transfer to the District of New Jersey, but the factors that guided this Court's decision to transfer the case—the locus of operative facts is in California and the case involves complex issues of California law—would still counsel toward transfer to the Central District of California rather than the District of New Jersey.

Because the Court grants Defendants' motion to transfer, it does not reach the issues of personal jurisdiction.

III.    CONCLUSION

For the reasons stated above, Defendants' motion to transfer is GRANTED.  The Clerk is instructed to terminate Docket Entry 11 and transfer this matter to the Central District of California.

**SO ORDERED.**


**Date:  September 24, 2018**                                        **VALERIE CAPRONI**
         **New York, New York**                               **United States District Judge**